**William R. THRIFT, Plaintiff,**

v.

**TENNECO CHEMICALS, INC., HEYDEN DIVISION, Defendant.**

Civ. A. No. CA–3–7137–D.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 17, 1974.

Russell M. Baker, Dallas, Tex., Ortega, Snead & Dixon, Albuquerque, N. M., for plaintiff.

Richard E. Gray, Jr., and George C. Chapman, Dallas, Tex., for defendant.

## ORDER OVERRULING MOTION FOR SUMMARY JUDGMENT

ROBERT M. HILL, District Judge.

This cause comes on before the court on the motion for summary judgment filed by the defendant Tenneco Chemicals, Inc., Heyden Division. The court is of the opinion that the motion should be denied.

The defendant is a corporation duly incorporated under the laws of the State of Delaware and has its principal place of business in Houston, Texas. The plaintiff, William R. Thrift, is a citizen of the State of New Mexico. During the time in question in this case the defendant was engaged in the manufacture of the drug "Thorium Oxide" which was sold under the trade name "Thorotrast." This drug is a roentgen contrast medium containing radioactive thorium dioxide and is used for various medical investigations and tests.

Plaintiff alleges that in September of 1950 he entered Baylor University Hospital in Dallas, Texas, and while undergoing certain medical tests Thorotrast was administered to him by injection. Immediately following the administration of Thorotrast, plaintiff suffered a reaction to the drug, but was treated and subsequently released from the hospital. In May of 1971 plaintiff was admitted to a hospital in New Mexico due to a progressive and recurrent abdominal pain. On May 15, 1971, plaintiff was diagnosed by the treating physicians to have a thorium granuloma with chylous peritonitis, a condition which plaintiff alleges was proximately caused by the injection of Thorotrast. This suit was filed by plaintiff against defendant on May 2, 1973, approximately twenty-three years after the allegedly defective drug was administered to the plaintiff.

Plaintiff's action is grounded on the theory that the defendant was negligent in putting an unreasonably dangerous and defective drug into the stream of commerce, that the defendant breached express and implied warranties of fitness for a particular purpose, and that the defendant is strictly liable for supplying a defective and unreasonably dangerous product. The defendant contends that plaintiff's cause of action is barred by limitations.

The Texas two-year statute of limitations, Vernon's Tex.Rev.Civ.Stat. Ann. art. 5526, applies to both actions arising from negligence and those arising from breach of warranties. Burleson v. Meade Johnson & Co., 331 F.Supp. 710 (N.D.Tex.1971) aff'd 463 F.2d 180 (5th Cir. 1972). The parties agree that art. 5526 is the applicable statute in this case, but their positions diverge on when the statute begins to run. In its motion for summary judgment the defendant contends that the statute begins to run from the time of the accrual of the injury, and thus plaintiff's claims are barred. Plaintiff contends that the statute begins to run at the time he discovered or reasonably should have discovered the nature and cause of his injuries, which in this case he contends was May 15, 1971.

Defendant relies, *inter alia,* on Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S.W. 36 (1888), an early case in which the Texas Supreme Court adopted a test for determining when a cause of action accrues. In *Houston Water-Works* the plaintiff sued for injury to his building caused by the defendants cutting a supporting arch in an adjacent building two years prior to the filing of the suit, but the damage to plaintiff's building did not occur within two years prior to the filing of the suit. In adopting the so-called accrual rule the court stated:

> When an act is in itself lawful as to the person who bases an action on injuries subsequently accruing from, and

consequent upon, the act, it is held that the cause of action does not accrue until the injury is sustained . . . . If, however, the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act, although these may not have been fully developed until within a period less than necessary to complete the bar. 8 S.W. at 37.

The plaintiff acknowledges that the rule in *Houston Water-Works* has been consistently followed by the Texas courts, but argues that exceptions have been made and should be made here.

The "discovery rule" is an exception for extending the statutory time within which to file a suit. This exception is based upon the knowledge and conduct of the plaintiff and interprets the word *accrual* in the statute of limitations to mean the time that the plaintiff discovers his injury, or in the exercise of reasonable diligence should have discovered the injury. Hays v. Hall, 488 S.W.2d 412, 413–414 (Tex.1972); Perdue, The Law of Texas Medical Malpractice, 11 Hou.L.Rev. 825, 839 (1974).

■■ The Texas Supreme Court and other courts have not expressly decided the question of when a cause of action accrues and their limitations commences to run in cases involving an insidious and slowly developing side effect from a drug administered pursuant to a physician's direction. It is well settled that when a federal court must apply the law of a state as in this diversity case, and there is no direct authority from the courts of the state as to how they would decide the particular point of law at issue, the federal court must make its own determination as to what a state court would probably do. *E. g.*, Farmers & Bankers Life Ins. Co. v. St. Regis Paper Co., 456 F.2d 347 (5th Cir. 1972); Putman v. Erie City Mfg. Co., 338 F.2d 911, 917 (5th Cir. 1964). The federal court must be guided by the law which in its opinion provides the most just and reasoned analysis. Passwaters v. General Motors Corp., 454 F.2d 1270, 1278 (8th Cir. 1972). An analysis of the relevant Texas law indicates that given the instant fact situation the Texas courts would hold that the cause of action accrued and the statute started running on plaintiff's negligence and breach of warranty causes of action when plaintiff discovered or reasonably should have discovered the nature and cause of his alleged injuries.

The Texas Supreme Court has recently adopted the discovery rule and held in certain types of medical malpractice cases that the statute of limitations commences to run when the patient learns of, or in the exercise of ordinary care should have learned of, his injury. Hays v. Hall, 488 S.W.2d 412, 414 (Tex.1972); Gaddis v. Smith, 417 S.W.2d 577, 580 (Tex.1967). In *Gaddis* the rule was made applicable to cases involving foreign objects left by a physician in a patient's body. In so holding the court stated:

It is a virtual certainty that the patient [had] no knowledge on the day following the surgery—nor for a long time thereafter—that a foreign object was left in the incision. Courts out of necessity have made exceptions in order to do justice. 417 S.W.2d at 580.

The *Gaddis* case was expressly limited to causes of action in which a physician leaves a foreign object in the body of a patient. *Id.* 417 S.W.2d at 581. The Supreme Court in *Hays* noted the limitation of *Gaddis* but proceeded to extend the discovery rule to malpractice cases arising from vasectomy operations. 488 S.W.2d at 414. In extending the rule to vasectomy cases the *Hays* court reasoned:

If the limitation period is measured from the date of the operation, and if the discovery of fertility, and therefore the injury, is not made until after

the period of limitation has run, the result is that legal remedy is unavailable to the injured party before he can know that he is injured. A result so absurd and so unjust ought not to be possible. 488 S.W.2d at 414.

Defendant urges that there is a distinction between the case *sub judice* and *Gaddis* and *Hays* because the latter two cases involved physicians who were in a position to know of the injury to the patient whereas in the instant case a drug manufacturer is involved who was not in such a position. This court is unpersuaded by this argument.

In applying the discovery rule to cases involving foreign objects left by physicians in patient's bodies, the court in *Gaddis* reasoned:

. . . the disadvantage to the defendant is over-balanced by the shocking results of the contrary rule which would bar a plaintiff from recovery when he could not know of the wrongful act until after the period of time prescribed by the statute of limitations had run. 417 S.W.2d at 581.

In *Hays* the Texas Supreme Court explained its holding in *Gaddis*:

This court held [in *Gaddis*], because the patient has no way of knowing that a foreign object has been left in the incision, the cause of action for such negligence "accrues when the patient learns of, or, in the exercise of reasonable care and diligence, should have learned of" the injury. 488 S.W.2d at 413.

In adopting the discovery rule to vasectomy cases the court went on to state:

This is not an extension of the limitation period but is merely a recognition that in certain situations it is difficult if not altogether impossible to discover the existence of a legal injury. This recognition gave rise to the holding in *Gaddis* and to the application in other jurisdictions of what has been called the 'discovery rule'. 488 S.W.2d at 413-414.

In the opinion of this court, the reasoning of the court in *Hall* and *Gaddis* ap-plies to the instant case. The situation in which the side effects of a drug injected into a patient develops slowly is one in which the patient had no way of knowing of the development of the drug's effects until they manifest themselves. In this situation, as in the situation of a vasectomy and a foreign object in the body, it would be difficult if not altogether impossible to discover the existence of the legal injury until it manifests itself.

■ This court is mindful of the apparent reluctance of the Texas Supreme Court to expand the discovery rule to a rule of general applicability. At present the discovery rule applies only in two situations—foreign object and vasectomy malpractice actions. The holding in *Hays*, however, is an indication that the court will extend the doctrine in situations where it is "difficult if not altogether impossible to discover the existence of a legal injury." It should be noted that *Hays* was not expressly limited to its facts, as was *Gaddis*. Moreover, in Nichols v. Smith, 507 S.W.2d 518 (Tex. 1974), the applicability of the discovery rule was not at issue, but the court indicated that the rule might apply in similar cases. 507 S.W.2d at 521; *see* Perdue, The Law of Texas Medical Malpractice, 11 Hous.L.Rev. 825, 839 (1974). The facts alleged in the case *sub judice* present a situation in which it would be difficult or impossible to ascertain existence of a legal injury and this court is of the opinion that the Texas Supreme Court would extend the discovery rule so as to avoid "an absurd and unjust result." *See* Borel v. Fibreboard Paper Prods. Corp., 493 F.2d 1076, 1102 (5th Cir. 1973) (dictum) (rehearing en banc denied). Of course the question of when an injury manifests itself is a question for the jury, *see* R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir. 1963), and this issue, as well as others, will be resolved at a trial.

■ The foregoing applies to plaintiff's claims based on breach of warranty as well as to plaintiff's negligence claims. It appears however that the rule in Texas

is that limitation commences for breach of warranty when the plaintiff discovers or should discover the injury. Metal Structures Corp. v. Plains Textiles, Inc., 470 S.W.2d 93, 99 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.); Puretex Lemon Juice v. S. Riekes & Sons, 351 S.W.2d 119, 122 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.).

This court concludes that the defendant has not established that it is entitled to judgment as a matter of law and that there exists disputed issues of material facts. Therefore the motion for summary judgment should be denied.

It is so Ordered this 17th day of September, 1974.