**Robert HINES and Ruth C. Hines, his wife, Plaintiffs,**

v.

**TENNECO CHEMICALS, INC., Defendant.**

**Civ. A. No. H–79–1473.**

United States District Court, S. D. Texas, Houston Division.

Sept. 9, 1982.

---

William E. Snead, Ortega & Snead, Albuquerque, N.M., W. Wiley Doran, Mitchell & Doran, Houston, Tex., for plaintiffs.

H. Ronald Welsh, Vinson & Elkins, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

Robert and Ruth Hines, husband and wife, brought this products liability action against defendant Tenneco Chemicals, Inc. ("Tenneco") asserting that defendant (1) was negligent in putting an unreasonably dangerous and defective drug into the stream of commerce; (2) had breached express and implied warranties of fitness for a particular purpose, and (3) is strictly liable for supplying an unreasonably dangerous and defective product.

Plaintiffs allege that in October 1943 Ruth Hines entered Duke University Hospital in Durham, North Carolina to undergo diagnostic tests, one of which was an arteriogram administered to determine the presence of an aneurysm. Mrs. Hines was injected with a roentgen contrast medium marketed under the trade name "Thorotrast" which contains thorium dioxide. Plaintiffs assert that during the time in question in this case Tenneco was engaged in the manufacture and sale of this substance.

In January 1965 Mrs. Hines was admitted to Sampson County Memorial Hospital in Clinton, North Carolina for treatment of a throat ulcer and in March of that year underwent surgery at North Carolina Memorial Hospital in Chapel Hill in an attempt to relieve this problem. Although the throat ulcer subsequently healed, over the years Mrs. Hines saw various physicians for recurrent throat and ear problems. In January 1977 Mrs. Hines was treated as an outpatient at North Carolina Memorial Hospital where her condition was diagnosed as "thorotrast granuloma." In June 1978 Mrs. Hines stayed for two days at Rosewood General Hospital in Houston, Texas where doctors diagnosed her condition as degeneration of the cervical spine, loss of hearing, weakness in the right arm, Horner's syn-

drome, thorotrast granuloma of the right cervical region, and residual thorotrast in the cervical lymph nodes, and liver, and spleen.

Plaintiffs contend that Mrs. Hines's disabilities were proximately caused by the injection of Thorotrast in 1943. They filed this lawsuit thirty-six years after this event.

Tenneco brings this motion for summary judgment and contends that (1) plaintiffs' causes of action based on negligence, strict liability, and warranty are barred by the statute of limitations; and (2) plaintiffs' causes of action for breach of implied and · express warranty are not recognized by the law of North Carolina, which is the applicable law in this case.   ·

It is the opinion of this court that the Texas statute of limitations does not bar plaintiffs' lawsuit, but that the theories of strict liability and breach of warranty are not available to plaintiff under the laws of North Carolina.

## I. THE SUBSTANTIVE LAW OF NORTH CAROLINA APPLIES TO THE MERITS OF THE CASE

■ A federal court sitting in diversity must apply the same substantive law as would be applied by the forum state's courts. *Erie Railroad v. Tomkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the latter's conflicts of law rules. *Day and Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975). *Klaxon v. Stanton Electric Manufacturing Company,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Therefore, this court will look to the laws of Texas to determine which state's laws will apply to the present case.

■ In *Guterriez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979) Texas abandoned the long-lived *lex loci delicti* approach to con-

flicts of laws in tort actions and adopted an interest analysis approach, the "most significant relationship" test, which is set out in the Restatement (Second) of Conflicts, Sections 6 and 145. This means that in choosing between the laws of North Carolina and Texas, this court will apply the substantive law of the jurisdiction having the most significant relationship to the case *sub judice.*

■ An examination of the facts of this case reveal that North Carolina's relationship surpasses that of Texas in significance. North Carolina is the place where both the injury and the conduct causing the injury occurred. Plaintiffs are domiciled in North Carolina and the relationship between the parties, if any, is centered in that state. Defendant is incorporated in Delaware has its principal place of business in New Jersey, and maintains an important corporate office in Houston, Texas where numerous employees work and reside. This last fact, plus the fact that plaintiff Mrs. Hines stayed in a Texas hospital for two days in 1977, comprise the only connection Texas has with this lawsuit.

In view of not only the number of contacts North Carolina has with this case, but also their relative importance when compared to those contacts with Texas, this court will apply North Carolina law as the substantive law in the present action.

## II. THE TEXAS STATUTE OF LIMITATIONS IS APPLICABLE TO THIS CASE

■ A federal court entertaining a diversity action is required to apply the same statute of limitation that the forum state would apply. *Guaranty v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471, 89 L.Ed. 2079 (1945). As a general principle, where the substantive law of another state is to be used, Texas courts will apply their own state's statute of limitation.[1] *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1111

1. An exception to this general rule is when the foreign jurisdiction's statute both creates a

right and incorporates a limitation on the time within which an action on the right may be

(5th Cir. 1981); *Morton v. Texas Welding & Manufacturing Co.,* 408 F.Supp. 7, 9 (S.D. Tex.1976). This is based on the view that under Texas conflicts of law rules, the statute of limitations is procedural, and Texas courts, as do the majority of jurisdictions, prefer to apply their own procedural law to the cases before them. *See Citibank, National Association v. London,* 526 F.Supp. 793, 805 (S.D.Tex.1981); *Morton v. Texas Welding & Manufacturing Co.,* 408 F.Supp. 7, 9 (S.D.Tex.1976); *Robinson v. Buckner Park, Inc.,* 547 S.W.2d 60 (Tex.Civ.App.—Dallas, 1977); *Home Ins. Co. v. Dick,* 15 S.W.2d 1028, 1031 (Tex.Comm.App.1929), *rev'd. on other grounds,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); C.J.S. *Limitations of Actions* § 27 (1948 & 1980 Supp.). Since the Texas courts would apply their own statute of limitation to the present action, this court is bound to do the same.

### III. TEXAS STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

#### A. Negligence Action

Neither the Texas Supreme Court nor lower courts have expressly addressed the issue of when the statute of limitations begins to run in cases where a person has suffered from a delayed manifestation of a malady traceable to the gradual accretion of a harmful substance administered under a physician's direction. Therefore, this court must make its own determination as to how the state court would rule. *Farmers and Bankers Life Ins. Co. v. St. Regis Paper Co.,* 456 F.2d 347, 348 n.1 (5th Cir. 1972); *Thrift v. Tenneco Chemicals, Inc. Heyden Div.,* 381 F.Supp. 543, 545 (N.D.Tex., 1974).

In so far as the Texas statute of limitations applies to this action, plaintiffs and defendant agree that article 5526 of Texas Revised Civil Statutes is the appropriate statute. Tex.Rev.Civ.Stat.Ann. art. 5526

(Vernon 1958). The parties disagree, however, as to when the cause of action accrues and sets the statute in motion. In its motion for summary judgment, defendant argues that *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977), controls and that under its authority plaintiffs' claim arose when she was injected with Thorotrast in 1943. Conversely, plaintiffs cite *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.1967), and its progeny and urge the court to apply the judicially developed "discovery rule" to this case.

Plaintiffs assert that they did not learn of the nature of Mrs. Hines's injury until her visit to Rosewood General Hospital in 1978, approximately one year before filing this lawsuit. In reply, defendant contends that even if the discovery rule is said to apply, plaintiff's action is time-barred because plaintiffs learned of her affliction in 1965 when she was treated at North Carolina Memorial Hospital. After careful consideration of both parties' arguments, this court holds that the statute of limitations commenced running when the actual injury which is the subject of this lawsuit became manifest or, alternatively, when plaintiff's discovered or should have discovered the injury.

#### 1. Manifestation of the Injury

As a general rule, under Texas law the two-year statute of limitations begins to run when facts come into existence which authorize the person asserting the claim to seek relief in a court of competent jurisdiction. *Williams v. Pure Oil Co.,* 124 Tex. 341, 78 S.W.2d 929, 931 (1935). In personal injury actions this usually means when the tort is committed, even though there may be difficulty in ascertaining the existence of an injury until a later date. *Bauman v. Centex Corp.,* 611 F.2d 1115, 1118 (5th Cir. 1980). However, Texas law distinguishes between those acts giving rise

---

brought. In this situation the limitation is considered so closely meshed with the right that it becomes part of the substantive rather than procedural law of the jurisdiction. *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1111 (5th Cir. Unit A, 1981).

to subsequent injury which are lawful and those which are unlawful. If the act itself constitutes an invasion of plaintiff's legally protected right or interest then the cause of action accrues when the act occurred; but if the act were not a legal transgression, then the claim arises when an actual injury results. *See id.* at 1118. *Thrift v. Tenneco Co.,* 381 F.Supp. 543, 544 (N.D.Tex.1974); *Lukenhoger v. American Fidelity & Casualty,* 152 Tex. 534, 260 S.W.2d 884, 886 (1953); *Houston Water Works v. Kennedy,* 70 Tex. 233, 8 S.W. 36, 37 (1888).

■ In the present case, the act of injecting the Thorotrast was lawful.[2] Since no injury was incurred in 1943, there were not sufficient facts in existence at that time which would have authorized plaintiff to seek legal relief. *See Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977); *Williams v. Pure Oil Co.,* 124 Tex. 341, 78 S.W.2d 929 (1935). Consequently, the statute of limitations began to run when injury to the plaintiff was actually sustained. The question of when the injury was sustained is susceptible to factual dispute and cannot be summarily decided.

There is recent authority for the proposition that a slight manifestation of a disease or injury that foreshadows a graver, distinct affliction emanating from the same source should not cause the statute of limitations to run for the subsequent affliction. In *Wilson v. Johns-Manville Sales Corp.,* 684 F.2d 111 (D.C.Cir.1982) an insulation worker who was regularly exposed to asbestos was diagnosed in 1973 as suffering from mild asbestosis. Five years later mesothelioma was diagnosed; three months after that he died. The following year his widow instituted an action against the designers, manufacturers, and distributors of asbestos and asbestos products. In ruling on defendant's motion for summary judgment, the court held that the diagnosis of mild asbestosis in 1973 did not cause the claim involving mesothelioma to accrue at that time even though both afflictions were attributable to the same asbestos source. This decision was arrived at in part by weighing the parties' competing interests. The court decided that the defendant's interest in repose was outweighed by, among other factors, the policy favoring the award to plaintiff of fair compensation for serious harm.

■ In the case *sub judice* it is difficult to ascertain from the pleadings and file the exact injury that is the subject of plaintiffs' claim. Mrs. Hines' medical history shows that throughout the years since the injection of Thorotrast in 1943, she has consulted many physicians about a variety of complaints. In 1948 Mrs. Hines was treated for a sore throat; in 1957 she had a tonsillectomy. In 1965 plaintiff was treated for a throat ulcer; a pharyngotomy was performed. In 1974 Mrs. Hines was diagnosed as having suffered a slight stroke. In 1977 she was examined with x-rays and residual Thorotrast in the head and neck region was found, specifically in the right carotid shield. Advanced generative osteoarthritis of the cervical spine was also found. In 1978 Mrs. Hines' condition was diagnosed by doctors at Rosewood General Hospital as thorotrast granuloma of the right cervical, or neck region, residual thorotrast in the lymph nodes, liver and spleen, right Horner's Syndrome affecting plaintiff's right eye, hearing loss, and minimum residual of the right hemiparesis, a weakness in plaintiff's right side. The record from Rosewood General Hospital also indicates that Mrs. Hines' throat ulcer had healed.

In their complaint, plaintiffs cite portions of the diagnosis that was made by doctors at Rosewood General Hospital, namely thorotrast granuloma in the right cervical region, residual thorotrast in the lymph nodes, liver, spleen and pharynx, marked degenerative changes in the cervical spine, hearing loss, and chronic ear problems. However, in their brief in opposition to defendant's motion for summary judgment, plaintiffs

---

**2.** This act was lawful because the physician was acting in the course of his duties and Mrs. Hines had given him permission to perform the arteriogram using Thorotrast.

refer vaguely to Mrs. Hines' "widespread, whole body disease." Thus, it is unclear whether plaintiffs are basing their claims for relief on all the injuries diagnosed at Rosewood General Hospital, those injuries cited in their complaint, "widespread, whole body disease," or illnesses Mrs. Hines has complained of in the past, such as the throat ulceration. One inference that may be drawn from the facts is that the throat ulcer was a separate and distinct injury from later problems, although this is a question subject to expert medical opinion. Consequently, it is necessary for this court to (1) determine the exact injury that is the subject of this lawsuit; (2) determine whether the illnesses Mrs. Hines was diagnosed as having in 1978 are separate and distinct from prior afflictions; and (3) determine when the relevant injuries were sustained. Once it is ascertained which injury is before the court, the statute of limitations will run from the date that injury was sustained.

### 2. Discovery Rule

■ In any event, the Texas courts would probably find the discovery rule applicable to this case, and thus hold that plaintiffs' negligence claim is not barred by the Texas statute of limitations *Thrift v. Tenneco Chemicals, Inc. Heyden Div.,* 381 F.Supp. 543 (N.D.Tex.1974). Texas courts have availed themselves of the discovery rule in medical malpractice, fraud, and products liability cases. Application of this rule means that a cause of action accrues when plaintiff knew or should have known by the exercise of ordinary care of the facts concerning his or her injury.

This court is aware of the apparent desire of the Texas Supreme Court to limit the inroads of the discovery rule exception into the general rule. In *Robinson v. Weaver,* 550 S.W.2d 18, 21 (Tex.1977) the Supreme Court set forth its reasons for using caution in applying this exception. *Robinson* was a medical misdiagnosis lawsuit where the court was concerned with protecting the physician from the danger of "fraudulent or stale" claims where negligence could only be proved by expert hindsight. *Id.* at 21 (Tex.1977). In its opinion the court stated that the purpose of the statute of limitations, to compel the exercise of a right of action while witnesses are available and evidence is fresh in the parties minds, must be furthered even if this meant that a meritorious claim might thereby be precluded. *Id.* at 20.

In this case there seems to be little danger of a fraudulent claim since plaintiffs would have to present physical evidence of injury due to Thorotrast before recovery would be possible. This physical evidence may not in and of itself establish negligence, but it would preclude a frivolous or fraudulent claim. *See id.* at 21. In addition, while the concern that pertinent evidence may be lost or stale may be important when the defendant is an individual physician, expert hindsight testimony in this type of case may be more reliable than contemporaneous expert testimony since it can rely on more recent sophisticated scientific studies to help resolve the issue of proximate cause. *See generally,* Shields, *Delayed Manifestation Injuries: The Statute of Limitations as a Bar to DES Suits,* 11 Colum.Hum.Rights L.R.Ev. 127, 134 (1979–80). The passage of time in the present case will not substantially diminish the effectiveness of expert testimony on the issue of defendant's negligence at the time the Thorotrast was manufactured.

Finally, when the competing policies at issue in this question are weighed, that of protecting the defendant from stale claims versus favoring the adjudication of just claims, it would appear that the burden placed upon the manufacturer would be less onerous if the discovery rule were invoked, than would be the injustice caused the plaintiff if the discovery rule were not applied. *See Robinson v. Weaver,* 550 S.W.2d at 22. (Pope, J., dissenting.)

■ This court cannot say as a matter of law when plaintiffs learned or should

have learned of Mrs. Hines's illness. In any case, a preliminary determination will have to be made as to when the injury that is the subject of this lawsuit was sustained before the discovery rule may be applied. Therefore defendant is not entitled to summary judgment on this issue.

### B. Breach of Warranty and Strict Liability Actions

■ Article 5526 is the applicable statute of limitations for actions based on strict liability or breach of warranty. Unlike a negligence action, however, the limitation period commences when the user discovers or should have discovered the injury using reasonable diligence. *Fusco v. Johns-Manville Products Corp.,* 643 F.2d 1181, 1183 (1981); *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 99 (Tex.Civ. App.—Amarillo 1971, writ ref'd. n.r.e.).

As noted above, this court concludes that defendant has not established that it is entitled to judgment as a matter of law on the question of when plaintiffs' learned or should have learned of Mrs. Hines' injury; the matter is still open to factual dispute.

### IV. PLAINTIFFS' BREACH OF WARRANTIES AND STRICT LIABILITY CLAIMS ARE BARRED BY NORTH CAROLINA LAW

#### A. Strict Liability Action

■ In North Carolina there is neither a legislatively nor judicially recognized cause of action based on strict liability. In *Smith v. Fiber Controls Corp.,* 300 N.C. 669, 268 S.E.2d 504 (1980) the North Carolina Supreme Court, in response to plaintiff and amicus curiae's request that the court adopt the doctrine of strict liability in products liability actions, said, "given recent legislative activity in this area [referring to the 1979 Products Liability Act] we are not presently inclined to consider adoption of the rule of strict liability in products liability cases." *Id.* 268 S.E.2d at 510.[3] *Accord Seese v. Volkswagenwerk,* 648 F.2d 833 (3rd Cir. 1981). Therefore, as a matter of law plaintiffs are unable to pursue a strict liability claim.

#### B. Breach of Implied Warranty Action

■ Under the applicable law of North Carolina, an action for breach of implied warranty may not be maintained unless there is contractual privity between the plaintiff and defendant.[4] *Davis v. Siloo, Inc.,* 47 N.C.App. 237, 267 S.E.2d 354, 360 (1980); *Wyatt v. Equipment Co.,* 253 N.C. 355, 359, 117 S.E.2d 21 (N.C.1960). The courts have relaxed the privity requirements somewhat for warranties on food, drink, and insecticides in sealed containers.[5] The present case, however, involves a contrast medium for medical use, and thus does not fall within a recognized exception. Therefore plaintiffs' action under this theory is barred.

#### C. Breach of Express Warranty

■ North Carolina holds a manufacturer to an express warranty even if privity between plaintiff and defendant is absent. *Fowler v. General Electric,* 40 N.C. App. 301, 305, 252 S.E.2d 862, 864 (N.C.App. 1979); *Terry v. Double Cola Bottling,* 263 N.C. 1, 138 S.E.2d 753, 759 (N.C.1964) (Sharp, J., concurring). An express war-

---

**3.** The North Carolina legislature recently enacted a new products liability statute, see *infra* note 4, but declined to adopt strict liability as a ground for relief.

**4.** There is a recently enacted Products Liability Statute G.S. §§ 99B–2(b) which eliminates requirement for privity in implied warranty actions. Effective October 1, 1979, it is inapplicable to this case.

**5.** The sealed container of insecticide had printed on it statements about the product which the court said were intended by the manufacturer for the ultimate consumer and thus constituted a direct warranty. *Simpson v. American Oil Co.,* 217 N.C. 542, 8 S.E.2d 813 (N.C. 1940).

ranty arises when a manufacturer addresses a warranty directly to the ultimate user of a product. *Fowler v. General,* 252 S.E.2d at 862. Plaintiffs, however, have presented no evidence that tends to show that there were any warranties addressed directly to them. Therefore, defendant is granted summary judgment on this issue.

## V. PLAINTIFF'S NEGLIGENCE CLAIM AGAINST DEFENDANT MAY BE MAINTAINED UNDER NORTH CAROLINA LAW

██ North Carolina recognizes a products liability action based on a negligence theory. *Davis v. Siloo, Inc.,* 47 N.C.App. 237, 267 S.E.2d 354, 359 (1980). Therefore, plaintiffs may maintain a claim for relief based on this theory.

## VI. CONCLUSION

In Summary, this court makes the following rulings:

(1) The substantive Law of North Carolina applies to the merits of this case;

(2) The Texas Statute of Limitations is applicable to this case;

(3) The Texas statute of limitations does not bar plaintiffs' claims.

(4) Plaintiffs' breach of warranty and strict liability causes of action are barred by North Carolina law;

(5) Plaintiffs' negligence action is not barred by North Carolina law.

Therefore, this court grants defendant a partial summary judgment. Plaintiffs' negligence action against defendant may proceed to trial.

Accordingly, it is ADJUDGED, DECREED, AND ORDERED that defendants' motion for summary judgment be granted in part and denied in part. Specifically, defendant's motion for summary judgment on the statute of limitations is DENIED, defendant's motion for summary judgment on the plaintiff's strict liability and breach of warranty claims is GRANTED.