**Milton B. WILLIAMS and Myrtle Gallagher Williams, Plaintiffs,**

v.

**The UPJOHN COMPANY, Defendant.**

**Civ. A. No. H–92–2872.**

United States District Court, S.D. Texas.

Feb. 13, 1994.

Tom Alexander, Alexander & McEvily, Houston, TX, William Hawal, Dennis Lansdowne, Spangenberg Shibley Traci & Lancione, Cleveland, OH, Michael D. Wade, Bremer Wade Nelson Lohr & Corey, Grand Rapids, MI, for Milton B. Williams.

William Hawal and Dennis Lansdowne, Spangenberg Shibley Traci & Lancione, Cleveland, OH, Michael D. Wade, Bremer Wade Nelson Lohr & Corey, Grand Rapids, MI, for Myrtle Gallagher Williams.

Richard L. Josephson, Baker and Botts, Houston, TX, Marie S. Woodbury, Shook Hardy & Bacon, Kansas City, MO, for Upjohn Co.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is defendant The Upjohn Company's ("Upjohn") Motion and First Amended Motion for Summary Judgment (Docket Entries # 103 & # 140). After review of the pending motions, the affidavits and memoranda of law submitted in support, the responses, the pleadings, and the applicable law, this court finds that defendant's motion for summary judgment should be granted in part and denied in part.

### I. *Background.*

Plaintiff Milton Williams ("Williams") filed this lawsuit against Upjohn on August 26, 1992, alleging that his regular use of Halcion for insomnia from August 1987 through March 1988, as prescribed by his physician, caused him to become suicidal, homicidal, and totally irrational. Halcion, known generically as triazolam, is a prescription sleeping medication manufactured by Upjohn. It belongs to the family of drugs known as benzodiazepines and is prescribed for the short-term management of insomnia.

In his complaint, Williams alleges that Halcion was defective and unsafe for its intended purposes and that Upjohn was aware of this when it marketed the drug. Williams asserts claims against Upjohn on theories of (1) strict liability; (2) breach of implied warranties; (3) breach of implied warranty of fitness for a particular purpose; (4) negligence and gross negligence; (5) deceptive trade practices; (6) fraud; and (7) civil conspiracy. Myrtle Gallagher Williams, Williams' wife, asserts derivative claims against Upjohn on theories of mental anguish and loss of consortium.

On December 13, 1993, Upjohn filed its first amended motion for summary judgment alleging that the Williamses' claims are barred as a matter of law because (1) the complaint was not filed within the applicable statute of limitations; (2) there is no evidence that Upjohn committed fraud or participated in a civil conspiracy; and (3) that the "learned intermediary doctrine," which provides that a drug manufacturer's only duty is to warn the prescribing physician of potential adverse side effects, prohibits the Williamses from asserting a cause of action for failure to warn of the adverse effects of Halcion. Conversely, the Williamses contend that their claims are not barred by the statute of limitations because they are tolled by the "discovery rule." They also assert that the statute of limitations on the breach of implied warranty claims should be tolled because Williams was of "unsound mind." Additionally, the Williamses contend that they have provided enough evidence to withstand summary judgment on the fraud and conspiracy claims. Finally, the Williamses claim that the learned intermediary doctrine is inapplicable in this case because the warnings Upjohn provided to physicians were inadequate in that they failed to address sufficiently the dangers of Halcion.

### II. *Analysis.*

#### A. *The Negligence, Gross Negligence, Strict Liability, and DTPA Claims.*

Upjohn contends that the Williamses' claims are barred under the two-year statute

of limitations for personal injury claims. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). Upjohn apparently concedes that the discovery rule is applicable in this case. Upjohn contends, however, that because Williams' attorney, Brian Chandler ("Chandler"), was served on August 24, 1990, with the second amended petition in a lawsuit filed by the Williamses' neighbors, Armando and Maria Guadalupe Guillen ("the Guillens"), Williams, through his attorney, discovered or should have discovered the facts concerning his injury on that date, at the latest. The Guillens' second amended petition alleged that Williams "made lewd sexual advances toward [Maria Guillen], and was under the influence of alcohol and/or Halcion at the time of his arrival on the premises." *Armando & Maria Guadalupe Guillen v. Milton B. Williams,* No. 88–37418 (281st Dist. Ct., Harris County, Tex., Aug. 24, 1990). Upjohn cites cases holding that the knowledge of a claimant's lawyer is imputed to the claimant, and, thus, notice to an attorney is notice to the client employing him. *Canutillo Indep. Sch. Dist. v. Kennedy,* 673 S.W.2d 407, 409 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). Upjohn argues, therefore, that even under the discovery rule, the Williamses' complaint, filed August 26, 1992, is barred because it was filed after the expiration of the two-year limitations period.[1]

The Williamses assert that their claims against Upjohn are not barred by the statute of limitations because they did not discover Williams' injury until December 1991, when they watched a *60 Minutes* program concerning the adverse effects of Halcion. In the alternative, they claim that, even if Chandler's knowledge could be attributed to them, the statute would not have started running until September 1, 1990, at the earliest. As established by the affidavit of Barbara Ha-

chenburg, Chandler's associate, she was the first attorney at Chandler's firm to review the Guillens' second amended petition and her time records indicate that she did not read it until September 1, 1990. Thus, according to the Williamses, this is the earliest date that could be used to start the clock on the two-year statute of limitations.

█ Although Texas law must be consulted in this case to determine the applicable limitations periods, federal law determines when a cause of action accrues. *Slack v. Carpenter,* 7 F.3d 418, 419 (5th Cir.1993); *Gartrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir.1993). Generally, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Id.* The statute of limitations, therefore, begins to run when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury. *Id.* A federal court in a diversity action, however, gives effect to the state's tolling provisions. *FDIC v. Dawson,* 4 F.3d 1303 (5th Cir.1993). Thus, the discovery rule, a Texas tolling provision, is applicable in the instant case. The discovery rule applies to those situations in which a claimant was unable to know of his injury at the time of actual accrual. *Id.* Therefore, a cause of action under the discovery rule is said to accrue when the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts concerning his or her injury. *Hines v. Tenneco Chem., Inc.,* 546 F.Supp. 1229, 1235 (S.D.Tex. 1982), *aff'd,* 728 F.2d 729 (5th Cir.1984); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988). Because Texas applies a two-year statute of limitations for personal injury actions, the Williamses were required to bring these claims "not later than two years after the day" Williams discovered or should have

---

1. Upjohn seemingly has abandoned its initial contention that the Guillens' original and first amended petitions provided Williams with adequate notice concerning the facts of his injury to trigger the running of the statute of limitations. The original petition does not even refer to Halcion, and the first amended petition merely states:

Plaintiff would further show that, at the time of this occurrence, Defendant was under extreme stress and on medication prescribed by his

doctor to correct a sleep disorder. Therefore, Defendant's mental and emotional stability at the time of this incident is in issue and a contributing factor to the incident made the basis of this suit.

While this might have put Williams on notice that stress and/or mental and emotional instability led to the incident, it does not suggest that the medication prescribed to correct his sleep disorder contributed in any way to his actions.

discovered the cause of his injury. *Adams v. Gates Learjet Corp.*, 711 F.Supp. 1377, 1379 (N.D.Tex.1989); Tex.Civ.Prac. & Rem.Code Ann. § 16.003.

■ Under the discovery rule, the statute of limitations does not begin to run until the claimant discovers or *should have discovered through the exercise of reasonable care and diligence* the facts concerning his or her injury. In this case, assuming *arguendo*, that actual knowledge of the contents of the Guillens' second amended petition could be imputed to the Williamses as of Friday, August 24, 1990, the date it was delivered to Chandler's office, this court cannot conclude as a matter of law that they would have been on notice that Halcion caused Williams' aberrant behavior. The second amended petition seems merely to suggest a possible link between Halcion and Williams' conduct, prompting further investigation to ascertain the existence of a causal connection. Furthermore, this court cannot conclude as a matter of law that the exercise of reasonable care and diligence would have required them to complete their investigation prior to Sunday, August 26, 1990, in order to discover a potential causal effect. Thus, a genuine issue of material fact exists regarding when the Williamses discovered or should have discovered the facts concerning Williams' injury, precluding summary judgment on the basis of limitations.

■ With respect to the Williamses' strict liability claim, Upjohn also contends that the learned intermediary doctrine precludes them from maintaining this suit against Upjohn. Texas courts apply the learned intermediary doctrine in cases involving a drug manufacturer's duty to warn. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591–92 (Tex.1986). Under this doctrine, a manufacturer's duty to warn is satisfied by *adequately* warning the physician of the dangers of the drug. *Hurley v. Lederle Lab.*, 863 F.2d 1173, 1179 (5th Cir.1988) (quoting *Swayze v. McNeil Lab.*, 807 F.2d 464, 472 (5th Cir.1987)); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d at 591. When the warning to the intermediary is inadequate or misleading, however, the manufacturer remains liable for injuries sustained by the ultimate

user. *Id.* at 592 (quoting *Bristol–Meyers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978); *Crocker v. Winthrop Lab.*, 514 S.W.2d 429, 433 (Tex.1974)). Moreover, the approval of a package insert by the Food and Drug Administration ("FDA") does not relieve a manufacturer of its obligation to communicate an adequate warning to the users of a dangerous drug. *Bristol–Meyers Co. v. Gonzales*, 561 S.W.2d at 803; *Salmon v. Parke, Davis Co.*, 520 F.2d 1359, 1362 (4th Cir.1975). Generally, under Texas law, the adequacy of a warning is a question of fact to be determined by the jury. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d at 592 (quoting *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.)).

■ Here, a fact question exists as to whether the warnings accompanying Halcion were adequate to inform Dr. Hibner, Williams' treating physician, of the nature and extent of the risks associated with Halcion. The package insert focuses upon the side effects of drowsiness, dizziness, and lightheadedness, which reasonably could be expected of a drug prescribed for insomnia, and cautions against "engaging in hazardous occupations requiring complete mental alertness such as operating machinery or driving a motor vehicle." The "Warnings" section of the insert mentions that "anterograde amnesia of varying severity and paradoxical reactions have been reported following therapeutic doses of Halcion." The insert makes no mention, however, of homicidal or assaultive behavior and addresses suicidal tendencies only in connection with patients already suffering from depression. Moreover, while the insert, as well as a letter sent to physicians, mentions confusion, bizarre or abnormal behavior, agitation and hallucinations, it suggests, based on spontaneous marketing reports, that this behavior might be dose related and characterizes the evidence as inconclusive. The Williamses presented deposition testimony and internal Upjohn memoranda indicating that Upjohn did not provide the FDA with complete and accurate information concerning the adverse effects of Halcion so as to ensure the inclusion of adequate warnings on the package inserts. Hence,

while the learned intermediary doctrine may apply, "[a] factual issue remains, however, as to whether the manufacturer provided the FDA all the necessary and available information on which to base the warning" to the intermediary. *Hurley v. Lederle Lab.*, 863 F.2d at 1179.

Accordingly, Upjohn's motion for summary judgment with respect to the Williamses' negligence, gross negligence, strict liability, and DTPA claims is denied.

B. *The Implied Warranties and Implied Warranty of Fitness for a Particular Purpose Claims.*

▬ The Williamses also assert causes of action against Upjohn for breach of implied warranties and breach of implied warranty of fitness for a particular purpose. These claims are subject to a four-year limitations period under Tex.Bus. & Com.Code Ann. § 2.725 (Vernon 1986). Under Texas law, "a cause of action for breach of implied warranty accrues when the product is delivered rather than when the product user should have discovered the breach ... a cause of action for personal injuries based upon a breach of implied warranty of fitness accrues when the product is delivered." *Weeks v. J.I. Case Co.*, 694 S.W.2d 634, 636 (Tex.App.—Texarkana 1985, no writ). Moreover, because they "relate to the condition, kind, characteristics, suitability, etc. of sold goods at the time of sale ... the statute of limitations on implied warranties runs from the date of sale" and cannot be extended to future performance. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546 (Tex. 1986); *see also Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 892 (Tex. App.—El Paso 1983, no writ). Therefore, the statute of limitations on the Williamses' causes of action based upon breach of implied warranties began to run when the Halcion was delivered to Williams.

The Williamses admit that the first prescription for Halcion upon which they base this action was filled in August 1987. Furthermore, it is undisputed that the last date that Halcion was sold to Williams was March 26, 1988. Thus, the Williamses' breach of implied warranty claims accrued more than

four years before the filing of this lawsuit. The Williamses argue, however, that Williams was of "unsound mind" on March 26, 1988, thereby tolling the statute of limitations on the implied warranty claims. While Williams may have been mentally impaired at one time, a review of the evidence reveals that he was clearly capable of understanding his legal rights by mid-April 1988, when he stopped taking Halcion, returned to live with his wife in their home, and resumed his daily routine. Consequently, because the instant complaint was not filed until August 26, 1992, the Williamses' breach of implied warranties and implied warranty of fitness for a particular purpose claims are barred by limitations as a matter of law.

Accordingly, Upjohn's motion for summary judgment with respect to these claims is granted.

C. *The Fraud Claim.*

▬ Upjohn contends that the Williamses have failed to present sufficient evidence to withstand summary judgment on their fraud claim. Upjohn further asserts that the fraud claim is barred by the applicable statute of limitations, which it contends is two years. Under Texas law, the discovery rule applies to fraud claims as well as to other tort claims. *Clade v. Larsen*, 838 S.W.2d 277, 282 (Tex.App.—Dallas 1992, writ denied) (quoting *Willis v. Maverick*, 760 S.W.2d at 645). In the instant case, the Williamses arguably did not and could not have discovered Upjohn's allegedly fraudulent conduct until December 1991, when they watched a *60 Minutes* news program concerning the submission to the FDA of allegedly incomplete and inaccurate test data regarding Halcion. An awareness at an earlier date that Halcion had caused Williams' aberrant behavior would not necessarily have put the Williamses on notice that Upjohn had engaged in fraudulent conduct with respect to Halcion, especially if, as the Williamses contend, Upjohn attempted to conceal that conduct. Consequently, irrespective of whether the claim is governed by a two or a four-year statute of limitations, this court cannot conclude as a matter of the law that the fraud claim is barred by limitations. As

with their other tort claims, a genuine question of material fact exists as to the timeliness of the Williamses' fraud claim.

■■■ With respect to Upjohn's contention that the Williamses have failed to prove fraud, summary judgment on a fraud claim is proper when the nonmovant fails to respond with evidence sufficient to establish a fact question on each essential element of his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992); *Moore v. Mississippi Valley St. Univ.,* 871 F.2d 545, 549–50 (5th Cir.1989). When a movant for summary judgment demonstrates the absence of evidence to support a claim on which the nonmovant will bear the burden of proof at trial, in order to prevail, the nonmovant must adduce enough evidence to present "sufficient disagreement" on each element of his claim. *Skotak v. Tenneco Resins, Inc.,* 953 F.2d at 913; *Chiari v. City of League City,* 920 F.2d 311, 314 (5th Cir. 1991); *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1444 (5th Cir.), *amended in part,* 905 F.2d 61 (5th Cir.1990).

■■■ To maintain a cause of action for fraud under Texas law, a plaintiff must establish that: (1) the defendant made a material misrepresentation; (2) it was false; (3) the defendant knew his statement was false when he made it or recklessly made his statement as a positive assertion without knowledge of the truth; (4) the defendant intended that the plaintiff rely on his misrepresentation; (5) the plaintiff relied on the misrepresentation; and (6) the plaintiff suffered injury. *Jackson v. Speer,* 974 F.2d 676, 679 (5th Cir.1992); *Boggan v. Data Sys. Network Corp.,* 969 F.2d 149, 151–52 (5th Cir. 1992); *1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1287 (5th Cir.1991); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex. 1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). Here, Upjohn claims that the Williamses cannot adduce enough evidence to support the fraudulent intent, material misrepresentation, and reliance elements of the fraud claim.

The Williamses contend that fraudulent intent may be inferred from Upjohn's knowingly supplying allegedly inaccurate and incomplete date to the FDA regarding the side effects of Halcion, such that the package insert affirmatively misrepresented the risks of Halcion. The Williamses also note that summary judgment generally is inappropriate when inferences parties seek to draw deal with questions of motive and intent. *United Indus. Corp. v. Nuclear Corp. of Am.,* 43 F.R.D. 30, 31 (S.D.N.Y.1967). In support of its claim that the Williamses cannot show fraudulent intent, Upjohn points to a single question and answer in the deposition testimony of Martin B. Scharf ("Scharf"), an expert witness designated by the Williamses. Scharf responded in the negative when Upjohn's attorney asked him if he had any factual evidence showing that Upjohn intentionally misrepresented information about Halcion to the FDA in order to obtain approval for the drug. Upjohn overlooks other evidence, however, such as its own internal memoranda and the testimony of other witnesses, that support the Williamses' position that Upjohn was aware of and attempted to conceal from the FDA certain adverse reactions from the use of Halcion, leading to affirmative misrepresentations about the frequency and severity of its side effects being included in the package insert. Hence, the court finds there to be adequate evidence to demonstrate "sufficient disagreement" as to whether Upjohn fraudulently intended to misrepresent the risks of Halcion.

■■■ Upjohn further claims that the Williamses cannot prove that Upjohn made material misrepresentations to Williams. Upjohn asserts that if it made any misrepresentations, they were made only to the FDA, not to Williams. Deposition testimony, however, establishes that Dr. Hibner went over the warnings on the package insert with Williams. Williams' affidavit also reflects that he relied on Upjohn to provide accurate warnings regarding the safety of Halcion. Thus, there is sufficient evidence to give rise to a fact issue concerning whether Upjohn made material misrepresentations to Williams.

Upjohn also contends that even if a misrepresentation is found, there is no evidence that Williams relied on the misrepresentation. In support of this assertion, Upjohn points to Williams' deposition testimony where he was asked whether it was possible that he would have continued to take the drug if his physician informed him of certain adverse effects of Halcion use. Williams responded that he would have asked his doctor what to do and would have done what she told him. Williams' deposition testimony, however, does not conclusively establish he did not rely upon any misrepresentations actually made by Upjohn. *See, e.g., Kolb v. Texas Emp. Ins. Ass'n,* 585 S.W.2d 870, 872–73 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). In his affidavit, Williams states that not only did he rely on Upjohn to provide adequate warnings, but that "[h]ad the warnings detailed all of the potential consequences as a result of taking Halcion known to the Upjohn Company, [he] would not have taken the drug." Based upon this testimony, it cannot be presumed that, if the adverse effects described were sufficiently severe or frequent, Williams would still have blindly followed his doctor's advice. Thus, a fact issue exists as to whether Williams relied upon any misrepresentations made by Upjohn.

Accordingly, Upjohn's motion for summary judgment with respect to the Williamses' fraud claim is denied.

### D. *The Conspiracy Claim.*

██ Upjohn characterizes the Williamses' conspiracy claim as one in which Upjohn conspired with others to market Halcion. Based on this characterization, Upjohn asserts that the conspiracy claim is barred by the two-year statute of limitations, in view of the fact that Williams' last purchase of Halcion was on March 26, 1988, because Williams could not have been injured by a conspiracy to market Halcion after his last purchase. A reading of the Williamses' second amended complaint, however, reveals that their conspiracy allegation against Upjohn is not based upon a conspiracy to market Halcion, but rather a conspiracy between Upjohn and its investigators to falsify test data and present misleading information concerning the risks of Halcion. As with the fraud claim, because the Williamses arguably did not and could not in the exercise of reasonable diligence have discovered the existence of this alleged conspiracy until December 1991, when they watched the *60 Minutes* broadcast discussing the risks of Halcion and the circumstances surrounding its approval by the FDA, the court cannot conclude as a matter of law that the conspiracy claim is barred by the statute of limitations. Likewise, there appears to be sufficient evidence in the record to raise a fact issue with respect to the conspiracy claim.

Accordingly, Upjohn's motion for summary judgment concerning the Williamses' conspiracy claim is denied.

### III. *Conclusion.*

With regard to the Williamses' claims of breach of implied warranties and implied warranty of fitness for a particular purpose, Upjohn's motions for summary judgment are GRANTED, as there exist no genuine issues of material fact with respect to those claims. With regard to the remaining claims of negligence, gross negligence, strict liability, deceptive trade practices, fraud, conspiracy, and loss of consortium, Upjohn's motions are DENIED, as the court finds that genuine issues of material fact exist with respect to each of those claims.

IT IS SO ORDERED.