Virginia BRUMLEY, Individually and as Representative of the Estate of Earnest Brumley, Heather Brumley, Gina Brumley Forrest, Earnest Brumley, Jr., and Michael Brumley, Plaintiffs,

v.

PFIZER, INC., Defendant.

No. CIV.A. C–00–160.

United States District Court,
S.D. Texas,
Corpus Christi Division.

June 15, 2001.

Darrell Lee Barger, Barger Hermansen et al., Mikal C. Watts, Harris and Watts, Michael Maldonado, Attorney at Law, Roger Sherman Braugh, Jr., Attorney at Law, Corpus Christi, TX, Jose G. Gonzalez, Jr., Attorney at Law, San Antonio, TX, for plaintiffs.

Jack Edward Urquhart, Norma Laura De Santos, Beirne Maynard & Parsons, Houston, TX, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JACK, District Judge.

Pending before the Court is Defendant Pfizer, Inc.'s motion for summary judgment. For the reasons stated below, the Court grants the motion.

### I. JURISDICTION

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### II. FACTS

This is a product liability action involving Viagra (sildenafil citrate), an oral prescription medication manufactured by Pfizer for the treatment of erectile dysfunction (ED). (Motion for Summary Judgment at page 1). On May 15, 1998, Decedent Earnest Brumley died of cardiac complications after taking his first dose of Viagra and engaging in sexual intercourse with his wife. (Brief in Support of Summary Judgment Motion at 5; Exhibit A to Summary Judgment Motion at 3). An autopsy found that Mr. Brumley's death was caused by "cardiac arrhythmia with accompanying severe ischemic cardiomyopathy." (Brief in Support of Summary Judgment Motion at 5).

At the time of his death, Mr. Brumley was 49 years old and had "ongoing symptomatic coronary artery disease" including "angina [chest pains] on a regular basis," for which he regularly took nitroglycerin tablets.[1] (Brief in Support of Summary Judgment Motion at 4). Before he was prescribed Viagra, Mr. Brumley would sometimes have to stop during sexual activity to take nitroglycerin to alleviate his chest pains. (Deposition of Mrs. Virginia Brumley, Exhibit E to Pfizer's Brief in Support of Summary Judgment Motion at 45). Mr. Brumley had an extensive family history of heart disease: his father had a heart attack; his mother died of a heart attack; and two of his brothers had bypass surgery. (Deposition of Mrs. Virginia Brumley, Exhibit E to Pfizer's Brief in Support of Summary Judgment Motion at 11–13). In 1991, Mr. Brumley underwent triple coronary bypass surgery. (Deposition of Dr. Brackin, Exhibit E to Pfizer's Brief in Support of Summary Judgment Motion at 21). In addition, he smoked "one and one half to two packs [of cigarettes] a day"; he suffered from obesity and high blood pressure; and he was diagnosed with chronic obstructive pulmonary disease. (Deposition of Dr. Brackin, Exhibit E to Pfizer's Brief in Support of Summary Judgment Motion at 13, 22–25).

On April 27, 2000, the estate of Decedent Earnest Brumley and related family members filed suit against Pfizer, alleging that Mr. Brumley died as a result of his use of Viagra. (Response to Summary Judgment Motion at 1, 8). They assert claims of (1) strict products liability for marketing defects, and (2) negligence.[2]

---

1. Dr. Jack Brackin, Mr. Brumley's treating physician, reported that Mr. Brumley was having "angina twice a week on a fairly stable pattern and would use one or two nitro to relieve it." (Deposition of Dr. Brackin, Exhibit E to Pfizer's Brief in Support of Summary Judgment Motion at 18).

2. In their complaint, Plaintiffs also asserted a defective design claim under a theory of strict products liability. However, at a May 14, 2001 hearing, Plaintiffs withdrew their defective design claim. (*See also* Joint Pretrial Order at 8).

On March 15, 2001, Pfizer moved for summary judgment, arguing that (1) there is no evidence that Viagra is defective; (2) there is no evidence that Viagra caused the death of Mr. Brumley; and (3) Viagra provided adequate warnings of the proper use of the drug. (Motion for Summary Judgment at 2–3).

Pfizer also filed *Daubert* motions, seeking to exclude the testimony of Plaintiffs' expert witnesses. Pfizer moved to exclude the expert testimony of Dr. Gerald Polukoff to the extent that his testimony went beyond the opinions stated in his Rule 26 report. In his Rule 26 report, Dr. Polukoff stated that "Viagra (sildenafil) and sexual activity triggered the untimely sudden death of Mr. Earnest Brumley" because "Viagra (sildenafil) ... enables sexual activity in patients at increased risk of cardiovascular events and death." (Exhibit F to Defendant's Brief in Support of Summary Judgment at 1). Pfizer also moved to exclude the testimony of Dr. Sanjay Kaul, a non-retained expert witness designated by Plaintiffs to testify at trial on the safety of Viagra for heart patients. On June 5, 2001, the Court granted Pfizer's motion, excluding the testimony of Dr. Polukoff to the extent that his testimony went beyond the opinions stated in his Rule 26 report and excluding the testimony of Dr. Kaul. The Court now addresses Pfizer's summary judgment motion.

### III. DISCUSSION

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir.1996).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the nonmovant bears the burden of proof, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553; *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 747 (5th Cir.1989). Once the moving party has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1024 (5th Cir.1995) (citing *Munoz v. International Alliance of Theatrical Stage Employees,* 563 F.2d 205, 207 n. 1 (5th Cir.1977)). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh the evidence, or draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at

2513. However, the court must draw all justifiable inferences from the summary judgment evidence in the light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513; *Pasant v. Jackson Nat'l Life Ins. Co.*, 52 F.3d 94, 96 (5th Cir.1995).

Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

Pfizer asserts three grounds for summary judgment: (1) that there is no evidence of a product defect; (2) that there is no evidence that Viagra caused Mr. Brumley's death; and (3) that under the "learned intermediary" doctrine, Pfizer provided an adequate warning of the cardiac risk associated with its product. Although Pfizer's motion and brief confuse some of these issues, the Court agrees that Plaintiffs have failed to produce evidence of at least one element of each of their claims.

### A.  Strict Products Liability

A strict liability claim in Texas is premised upon section 402A of the Restatement of Torts, 2d. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79–80 (Tex.1977). In order to recover under the theory of strict liability a Plaintiff must establish (1) the defective and unreasonably dangerous condition of the defendant's product; and (2) a causal connection between such condition and the plaintiff's injuries or damages. *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex.1984). A product is defective if it is (1) unreason-

ably dangerous as manufactured, (2) unreasonably dangerous as designed, or (3) unreasonably dangerous because adequate warnings or instruction were not provided. *Caterpillar v. Shears*, 911 S.W.2d 379, 382 (Tex.1995); *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex. 1991); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex.1984); *Sims v. Washex Machinery Corp.*, 932 S.W.2d 559 (Tex.App.—Houston [1st Dist] 1995, no writ).

### 1.  Marketing Defect

A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir.2001) (*citing Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549–50 (Tex.App.—San Antonio 2001, no writ)). Plaintiffs' strict products liability claim rests solely upon a theory of marketing defect.

In this case, Plaintiffs contend that Pfizer failed to communicate adequately the level of risk inherent in Viagra for a person with Mr. Brumley's medical condition and history. (Supplemental Response at 1). Pfizer moves for summary judgment on the ground that it adequately warned Mr. Brumley's treating physician, Dr. Brackin, of the risks of Viagra for patients with heart disease. (Brief in Support of Motion at 12–16).

Generally, under Texas law, the adequacy of a warning is a question of fact to be determined by the jury. *Williams v. Upjohn Co.*, 153 F.R.D. 110, 114 (S.D.Tex. 1994); *see also Alm*, 717 S.W.2d at 591–592; *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.*, 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974, writ ref'd

n.r.e.). However, if a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law. *See Rolen v. Burroughs Wellcome Co.,* 856 S.W.2d 607 (Tex.App.—Waco 1993, writ denied) (affirming summary judgment in favor of drug manufacturer where package insert warned of precise side effect on which plaintiff grounded cause of action); *see also Wyeth–Ayerst Lab. Co. v. Medrano,* 28 S.W.3d at 95 n. 6.

The package insert that Pfizer included with Viagra at the time Dr. Brackin prescribed Viagra to Mr. Brumley in April 1998 states in relevant part:

### CONTRAINDICATIONS

... Consistent with its known effects on the nitric oxide/cGMP pathway (see CLINICAL PHARMACOLOGY), Viagra was shown to potentiate the hypotensive effects of nitrates, and its administration to patients who are concurrently using organic nitrates in any form is therefore contraindicated.

### PRECAUTION

General

A thorough medical history and physical examination should be undertaken to diagnose erectile dysfunction, determine potential underlying causes, and identify appropriate treatment.

There is a degree of cardiac risk associated with sexual activity; therefore, the physician may wish to consider the cardiovascular status of their patients prior to initiating any treatment for erectile dysfunction.

(Exhibit C to Motion for Summary Judgment). In November 1998 Pfizer changed the Viagra insert to state the following:

### CONTRAINDICATIONS

Consistent with its known effects on the nitric oxide/cGMP pathway (see CLINICAL PHARMACOLOGY), Viagra was shown to potentiate the hypotensive effects of nitrates, and its administration to patients who are using organic nitrates, either regularly and/or intermittently, in any form is therefore contraindicated.

### WARNINGS

There is a potential for cardiac risk of sexual activity in patients with preexisting cardiovascular disease. Therefore, treatments for erectile dysfunction, including Viagra, should not be generally used in men for whom sexual activity is inadvisable because of their underlying cardiovascular status.

VIAGRA has systemic vasodilatory properties that resulted in transient decreases in supine blood pressure in healthy volunteers.... While this normally would be of little consequence in most patients, prior to prescribing VIAGRA, physicians should carefully consider whether their patients with underlying cardiovascular disease could be affected adversely by such vasodilatory effects, especially in combination with sexual activity.

There is no controlled clinical data on the safety or efficacy of VIAGRA in the following groups; if prescribed, this should be done with caution.

—Patients who have suffered a myocardial infarction, stroke, or life-threatening arrythmia within the last 6 months;

—Patients with resting hypotension (BP <90/50) or hypertension (BP>170/110);

—Patients with cardiac failure or coronary artery disease causing unstable angina; ·

—Patients with retinitis pigmentosa . . .

Information for Patients

Physicians should discuss with patients the potential cardiac risk of sexual activity in patients with preexisting cardiovascular risk factors. Patients who experience symptoms (e.g., angina pectoris, dizziness, nausea) upon initiation of sexual activity should be advised to refrain from further activity and should discuss the episode with their physician. (Exhibit J to motion for Summary Judgment). In both inserts, Pfizer warns physicians that they must take into consideration the "cardiovascular status" of their patients when deciding whether to prescribe Viagra, because sexual activity may increase cardiac risk.

Plaintiffs argue that the first warning is inadequate because it fails to warn physicians that, in addition to increasing a patient's ability to achieve and maintain an erection, Viagra "would also cause the patient to engage in sexual activities at an increased energy level." Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment at 7. Plaintiffs have not provided any evidence whatsoever that Viagra causes patients to engage in sexual activities at an increased energy level. They have submitted deposition testimony by Mrs. Brumley that, after taking Viagra, Mr. Brumley "was like a different person . . . like he was 25 years younger." Deposition of Virginia Brumley at 84, lines 3–5. This may be evidence of how Mr. Brumley acted, but it is no evidence that one of the pharmacological effects of Viagra is to cause its users to engage in more strenuous sex.

Plaintiffs also assert that the warning is inadequate because it fails to warn of an increase in sympathetic nerve activation, which increases cardiac risk "independently of participation in sexual activity." Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment at 7. Plaintiffs have failed to submit any evidence to create a genuine issue of material fact that this is the case. Plaintiffs attempted to support this theory with testimony from Dr. Gerald Polukoff, but the Court struck that testimony as unreliable (as well as untimely). *See Brumley, et al. v. Pfizer*, Civil No. C–00–160 (S.D. Tex. June 5, 2001) (Order Concerning Admissibility of Expert Witness Opinions). There is no evidence in the record, therefore, that Viagra increases cardiac risk as a pharmacological side effect.

Plaintiffs further assert that the first warning is inadequate because it is labeled "PRECAUTION", instead of "WARNING." Plaintiffs submit testimony from Dr. Brackin that a "warning" increases a physician's awareness level generally. *See* Deposition of Dr. Jack Brackin at 50, lines 21–22. The Court fails to see a material difference between the words "warning" and "precaution", when both are intended to alert physicians not to an inherent risk caused by Viagra itself, but to an inherent risk in sexual activity in patients with heart disease. It is undisputed that the cardiac risk that sexual intercourse poses to patients with heart disease is the same risk that any vigorous physical activity would pose to such patients.

Dr. Brackin testified that had he seen and been made aware of the information in the current package insert, he would have ruled out a Viagra prescription for Mr. Brumley. Deposition of Dr. Jack Brackin at 78, lines 23–79 and line 11. But Plaintiffs have not submitted any evidence of why Dr. Brackin would have ruled out the prescription, other than an "increased awareness" of the risk of sexual activity

for patients with heart disease. At the time he prescribed Viagra for Mr. Brumley, Dr. Brackin had information that Mr. Brumley did not fall into any of the four categories of patients listed in the new package insert for whom Viagra should be prescribed "with caution." Deposition of Dr. Jack Brackin at 54–56.[3]

A physician who is aware of his patient's heart disease is cognizant that the patient is at risk both during sexual intercourse and during any other strenuous exercise, and neither version of the viagra package insert contains any language that would delude a physician into thinking that Viagra would lessen this risk. In other words, both the original precaution and the second warning merely alert physicians to a risk of which they already should be aware—the danger that strenuous physical activity poses to patients with heart disease.

It is undisputed that Dr. Brackin was aware both of Mr. Brumley's heart condition as well as the cardiac risk inherent in physical exertion. Dr. Brackin provided Mr. Brumley with specific warnings about what to do if he suffered an angina attack during sexual intercourse. The warning— whether termed a "precaution" or a "warning"—addressed the specific circumstances in which Mr. Brumley suffered a fatal heart attack. Plaintiffs simply have not submitted any evidence that creates a genuine issue of material fact that either version of the Viagra insert contained an inadequate warning.

### 2. Learned Intermediary

■ Because the Court has found that the package insert available to Dr. Brackin was adequate, it is only a short step to find that the learned intermediary

doctrine applies to Plaintiffs' claims. The learned intermediary doctrine stated that a warning to an intermediary may fulfill a supplier's duty to warn ultimate consumers. *Wyeth–Ayerst Lab. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex.App.—Texarkana 2000, no writ history); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex.1986). In Texas, the most common use of this doctrine is in prescription drug cases. *Reyes v. Wyeth Lab.*, 498 F.2d 1264 (5th Cir.1974); *In re Norplant Contraceptive Prods. Liab. Lit.*, 955 F.Supp. 700, 703 (E.D.Tex.1997). Courts have found that it is reasonable for the manufacturer to rely on the health care provider to pass on its warnings, because the provider understands the propensities and dangers involved in the use of a given drug, and as the prescriber, he stands between the drug and the consumer. *Medrano*, 28 S.W.3d at 91; *Gravis v. Parke–Davis & Co.*, 502 S.W.2d 863, 870 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). Nevertheless, the warning to the physician must still be adequate, and if "the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user." *Alm*, 717 S.W.2d at 592. The Court concluded above that there is no evidence the warning was inadequate.

■ The evidence shows that Dr. Brackin was aware that his patient should not have been prescribed Viagra in the first place. It is undisputed that Mr. Brumley required nitrates for treatment of his stable angina, that he experienced angina approximately twice weekly, and that he had suffered angina during sexual relations. It also is undisputed that an angina patient with chest pains is in immediate need of the use of his nitrates and that the

---

**3.** Although Mr. Brumley had coronary artery disease and angina, he suffered from stable, as opposed to unstable, angina.

Viagra insert that Dr. Brackin had available when he prescribed Viagra for Mr. Brumley listed use of nitrates "in any form" as a contraindication. A contraindication is more than a warning; "contraindicate" is defined "to make (the indicated, or expected, treatment or drug) inadvisable." Webster's New World Dictionary of the American Language, Second College Edition (Simon & Schuster 1980).

Dr. Brackin nevertheless prescribed Viagra for Mr. Brumley, advising him that he should not take nitrates for at least 24 hours after taking Viagra. This demonstrates to the Court that Dr. Brackin at least was aware of the notice from the original insert that Viagra's "administration to patients who are concurrently using organic nitrates in any form is therefore contraindicated." Realizing, however, that an episode of angina could result from sexual activity, the physician then instructed Mr. Brumley what to do if he should have chest pains. Dr. Brackin told his patient to stop any activity and, if the pain did not subside, proceed immediately to a hospital.[4] The evidence demonstrates that Dr. Brackin, a learned intermediary, was provided with a warning about the risk that Viagra posed to patients in Mr. Brumley's circumstances, that he was aware of the risk, that he nevertheless chose to prescribe viagra for Mr. Brumley, and that Mr. Brumley relied on his physician to advise him about the effects of the medication. Accordingly, the "learned intermediary" doctrine is available to Pfizer and defeats Plaintiffs' claim of strict products liability.

### 3. Causation

■■■ Pfizer also argues that there is no evidence that Viagra caused Mr. Brumley's death. In a failure to warn case that is governed by the learned intermediary doctrine, even if the Court assumes that the plaintiff can prove that the given warnings were inadequate, the plaintiff still must prove causation. In order to prove causation, the plaintiff must show that a proper warning would have changed the decision of the intermediary to prescribe the product. *Wyeth–Ayerst Laboratories Co. v. Medrano*, 28 S.W.3d at 95 (*citing Stewart v. Janssen Pharmaceutica, Inc.*, 780 S.W.2d 910, 912 (Tex.App.—El Paso 1989, writ denied) *and In re Norplant*, 955 F.Supp. at 710–11). Plaintiffs contend that Dr. Brackin would not have prescribed Viagra to Mr. Brumley if the new warning on the Viagra package insert had been included at the time of Mr. Brumley's prescription. Nevertheless, because the Court has found that the original wording of the insert was adequate as a matter of law, this theory does not assist Plaintiffs.

Plaintiffs also have argued, however, that Viagra caused Mr. Brumley's death in two other ways. First, Plaintiffs contend that Viagra allowed Mr. Brumley to engage in vigorous sexual intercourse, and that the exertion from this activity caused Mr. Brumley to suffer a fatal heart attack. Second, Plaintiffs contend that Viagra's effect on the sympathetic nerve system increased cardiac risk in patients like Mr. Brumley, and that this effect caused him to suffer a fatal heart attack.

As explained above, the second theory fails because Plaintiffs have not adduced any evidence to create a genuine issue of material fact that Viagra's effect on the sympathetic nerve system, if any, caused Mr. Brumley's heart attack.

The first theory is more creative. Plaintiffs contend that Mr. Brumley would not

---

4. The Plaintiffs' expert, at the May 14, 2001 hearing, testified that this is the same advice he provides to patients now, after Pfizer began including the new version of the package insert, and with full knowledge of the contents of that insert.

have had sex, or would not have had sex as vigorously, as he did if he had not taken Viagra. Thus, Plaintiffs argue that Viagra was a "but for" cause of Mr. Brumley's heart attack. Plaintiffs have presented some evidence, in the form of the opinion of Dr. Gerald Polukoff, that Mr. Brumley's activity was enabled by Viagra and that the exertion of sexual activity caused his heart attack.

There are two problems with this theory of causation. The "learned intermediary" doctrine probably negates the element of cause in fact. The doctrine is recognized in Texas as a "distant relative" of the tort concept of superseding cause. *See Rolen v. Burroughs Wellcome Co., supra.* A superseding cause, however, is an act or omission of a separate and independent agency that destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes the immediate cause of such injury. *Benitz v. Gould Group,* 27 S.W.3d 109, 116 (Tex.App.—San Antonio 2000, no writ history). Thus, where a manufacturer of a medication provides adequate information to a physician, the physician's explanation of the warning, or failure to do so, breaks the chain of causation when the patient suffers the effect that the precaution warns against. Nevertheless, the learned intermediary doctrine generally is applicable to failure to warn cases. *See Wyeth–Ayerst Laboratories Co. v. Medrano,* 28 S.W.3d at 95. To the extent that Plaintiffs contend that the failure to provide an adequate warning caused Mr. Brumley's death, their claim fails because Pfizer did provide an adequate warning, and the burden then shifted to Mr. Brumley's physician to communicate that warning to his patient.

Plaintiffs also appear to be arguing that, independent of an inadequate warning, Viagra was unreasonably dangerous because it permitted Mr. Brumley to perform an act that he would not have otherwise. It is difficult to separate this claim from Plaintiffs' imputation of the package insert. More importantly, the Court agrees with Pfizer that the evidence Plaintiffs have adduced shows at most that the Viagra that Mr. Brumley took worked as it was intended, thus creating part of the scenario in which Mr. Brumley's injuries occurred. If viewed in the light most favorable to Plaintiffs, the most the Court could conclude from the evidence is that the cause in fact of Mr. Brumley's heart attack was engaging in sexual intercourse, which Viagra arguably enabled.[5] But cause in fact may still be too attenuated to constitute legal cause. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995). "Legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible. This principle applies with equal force to proximate cause and producing cause." *Id.* (citations omitted).

Plaintiffs respond by citing *O'Dell v. Home Indem. Co.,* 449 S.W.2d 485 (Tex. Civ.App.—Amarillo 1969, writ ref'd n.r.e.). In that case, a worker visited his doctor, who determined that he suffered from irregular heart rhythms; ignoring his doctor's advice, the worker returned to work. Shortly after leaving work, he died of a heart attack, and his heirs sought death benefits under the worker's compensation policy that covered the decedent's employer. The Texas Court of Civil Appeals noted, "A predisposing bodily infirmity such as diseased arteries or high blood pressure will not preclude or reduce compensation benefits if the ultimate incapaci-

---

5. Plaintiffs' expert, Dr. Polukoff, agreed at the May 14, 2001 hearing that Mr. Brumley was at risk of sudden death, with or without Viagra and with or without sexual intercourse.

ty is contributorily caused by an accident arising out of the employment.... Evidence of some type of strain or overexertion which occurred in the course and scope of employment and testimony by a doctor that the heart attack was probably the result of the strain or overexertion are usually sufficient" to establish a claim for benefits. *Id.* at 487. Without exploring the considerable differences between workers compensation law and product liability/negligence law, the Court notes that the recent expressions of the Texas Supreme Court simply are more compelling than the *O'Dell* case, which is remote in time and remote in principle.

Neither case is factually similar to the instant case, but *Union Pump* discusses in great detail the Texas law of causation, and resolves that cause in fact must be a substantial factor. The Supreme Court of Texas cited this language from the Restatement (Second) of Torts: "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." *Union Pump*, 898 S.W.2d at 776 (*quoting* Restatement (Second) of Torts § 431 cmt. a (1965)). Whether an impetus is sufficiently substantial to constitute a "legal cause" is a question of law. *See Union Pump*, 898 S.W.2d at 775 (describing court's endeavor as "[d]rawing the line between where legal causation may exist and where, as a matter of law, it cannot"). Even assuming that Viagra was one of the great number of factors without which Mr. Brumley would not have engaged in sexual intercourse, as a matter of law it was not "responsible," in the common sense understanding of the term, for his death.

### B. Negligence

The elements of a claim for negligence in Texas are: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages proximately resulting from that breach. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). As with strict products liability, a negligence claim requires proof of causation in fact. *See Rehabilitative Care Systems of America v. Davis*, 43 S.W.3d 649, 660–61 (Tex.App.—Texarkana 2001, no writ history) ("Negligence requires a showing of proximate cause, the components of which are cause in fact and foreseeability."). The Court already has determined that there is no evidence that Viagra caused Plaintiffs' death. Thus, Plaintiffs' claim of negligence fails as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, Pfizer's motion for summary judgment is GRANTED. Plaintiffs' claims are DISMISSED with prejudice. All parties shall bear their own costs and attorney fees.