**In re: REZULIN PRODUCTS LIABILITY LITIGATION**

This Document Relates to: 01 Civ. 3458, 01 Civ. 3459, 01 Civ. 3460, 02 Civ. 1721, 02 Civ. 1723, 02 Civ. 8395.

No. MDL 1348.
No. 00 Civ. 2843(LAK).

United States District Court,
S.D. New York.

Aug. 18, 2004.

Zoe Littlepage, Littlepage Booth, Houston, TX, for Certain Texas Plaintiffs.

David Klingsberg, Steven Glickstein, Kaye Scholer LLP, New York City, for Pfizer Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiffs in these actions seek damages for personal injuries allegedly sustained as a result of their use of the prescription diabetes medication Rezulin. Although the complaints assert numerous claims, the defendants contend that all properly are construed as seeking recovery for failure to warn of Rezulin's side effects.[1] Plaintiffs do not contest this characterization.[2]

Defendants Warner–Lambert Co. and Pfizer, Inc., move for summary judgment dismissing the complaints on the grounds that there are no genuine issues of material fact with respect to the adequacy of the Rezulin warnings as to the specific injuries alleged by these plaintiffs. In addition, they seek judgment as a matter of law as to certain claims on the additional basis that there is no issue of fact as to general causation.

All six cases originally were brought in state courts—three in Mississippi[3] and three others in Texas[4]—and then, following removal, were transferred here by the Judicial Panel on Multidistrict Litigation. The Texas plaintiffs have submitted a joint opposition to the motion, while the Mississippi plaintiffs have defaulted.

### I. Adequacy of Warnings

#### A. Facts

Insofar as is relevant here, plaintiffs claim that they were injured by ingestion of Rezulin and that the manufacturer defendants failed adequately to warn them of the drug's alleged adverse effects. Defendants rejoin that the injuries claimed by these plaintiffs are among the possible side effects of the drug concerning which their warnings were entirely adequate. It is appropriate therefore to begin by identifying the nature of the claimed injuries.

---

1. Def. Mem. 6–7.

2. Any arguably broader claims stated in some of the complaints therefore are deemed abandoned. *See, e.g., Dineen v. Stramka,* 228 F.Supp.2d 447, 454 (S.D.N.Y.2002).

3. *Sanders* (01 Civ. 3458. Ashley Hughes); *Maxwell* (01 Civ. 3459, Rosie J. Dent); and *Grayer* (01 Civ. 3460, Rosie D. Marsh).

4. *Barnes* (02 Civ. 1721, Joanna Jones); *Adams* (02 Civ. 1723, Jewelene Lambert); and *Allen* (02 Civ. 8395, Ernestine Conley).

As explained in greater detail in a recent opinion, familiarity with which is assumed, each of plaintiffs was required to complete a Fact Sheet under oath. detailing among other things the nature of the plaintiff's alleged injuries. The responses are treated as interrogatory answers.[5] The injuries claimed in their Fact Sheet responses by the plaintiffs to whom this motion is directed are "severe headaches" and "dizziness,"[6] "headaches" and "dizziness,"[7] "dizziness," "headaches," "diarrhea,"[8] "nausea,"[9] "swelling in the feet" (*i.e.*, edema) and "pain in the body,"[10] and "pain in the right side near the ribs."[11] Defendants' Rule 56.1 Statement asserted, on the basis of these responses, that these were the claimed injuries. Plaintiffs submitted no adequate response to that statement.[12] The factual assertions set forth in Defendants' Rule 56.1 Statement therefore are deemed true for purposes of the motion, thus establishing that the only injuries complained of are those set forth in the pact Sheet responses.

It is further uncontroverted that each of the injuries claimed by these six plaintiffs was identified as a potential side effect of Rezulin in a table in the Physicians' Desk Reference under the heading ADVERSE REACTIONS, which summarized side effects observed in patients who participated in Rezulin clinical trials.[13] For each side effect, including the six here alleged, the table reported the rate of occurrence observed, respectively, in the placebo and Rezulin patient trial groups:

| Adverse Effect | Placebo (n=492) | Rezulin (n=1450) |
|---|---|---|
| Nausea | 4 | 6 |
| Dizziness | 5 | 6 |
| Headache | 11 | 11 |
| Peripheral Edema | 5 | 5 |
| Pain | 14 | 10 |
| Diarrhea | 6 | 5 |

Accordingly, physicians were warned of these potential side effects of Rezulin.

5. *In re Rezulin Prod. Liab. Litig.*, 223 F.R.D. 109, at 110, 2004 WL 1383549, at *1 (S.D.N.Y.2004).

6. Def. 56.1 St. ¶ 1 (Ashley (or Jeanette) Hughes in *Sanders*). There is a plaintiff named "Jeanette" Hughes listed in the docket sheet in 01 Civ. 3458 and an "Ashley" Hughes associated with the same docket number in defendant's Rule 56.1 statement. Because there appears to be no other plaintiff by the last name of "Hughes" in the case bearing that docket number, the Court assumes that "Jeanette" and "Ashley" Hughes are the same person.

7. Def. 56.1 St. ¶ 4 (Rosie Dent in *Maxwell*).

8. Def. 56.1 St. ¶ 7 (Rosie Marsh in *Grayer*).

9. Def. 56.1 St. ¶ 14 (Earnestine Conley in *Barnes*).

10. Def. 56.1 St. ¶ 11 (Joanna Jones in *Allen*).

11. Def. 56.1 St. ¶ 21 (Jewelene Lambert in *Adams*).

12. The Mississippi plaintiffs submitted no response at all. The Texas plaintiffs submitted a purported response, but it did not respond as required to each of the factual assertions made by the movants, let alone cite to admissible evidence demonstrating the existence of a genuine issue of fact with respect to the assertion. *E.g.*, *Archie Comic Publications, Inc. v. DeCarlo*, 258 F.Supp.2d 315, 317–18 (S.D.N.Y.2003), *aff'd substantially on opinion below*, 88 Fed.Appx. 468, 2004 WL 393154 (2d Cir.2004); *In re Rezulin Prods. Liab. Litig.*, No. 00 Civ. 2843(LAK), 2002 WL 1997937, Pretrial Order No. ("PTO") 94, ¶¶ 1–2 (S.D.N.Y. Aug. 29, 2002) (requiring paragraph-by-paragraph response, specifically admitting or denying each factual averment on movant's Rule 56.1 Statement and, if denying, citing admissible evidence said to create genuine issue of fact).

13. *See* Def. 56.1 St. ¶¶ 2, 3, 5, 6, 8, 9, 10, 12, 13, 15, 17, 19, 20, 22, 26, 27; and DX B to DX I (attaching the Rezulin PDR labels with table, under ADVERSE REACTIONS, entitled "North American Placebo–Controlled Clinical Studies: Adverse Events Reported at a Frequency ≥5% of Rezulin–Treated Patients.")

The only issue is whether the warnings were adequate.

### B. Discussion

#### 1. The Learned Intermediary Doctrine

These are diversity actions in which the substantive issues are governed by state law. The parties agree that Mississippi law applies to the claims in *Sanders, Maxwell* and *Grayer* and that Texas law governs the claims in *Barnes, Adams* and *Allen.*

 The pertinent standards are substantially similar. Both states recognize the learned intermediary doctrine in pharmaceutical products liability cases. A manufacturer's duty to warn of possible side effects runs to the prescribing physician, not to the patient.[14] A plaintiff in a prescription drug failure to warn case therefore has the burden of proving that (1) the warning to the physician was defective, and (2) the inadequate warning proximately caused the plaintiff's injury, *i.e.*, that adequate warnings would have persuaded the physician not to prescribe the drug in question.[15]

#### 2. The Texas Claims

Under Texas law, the adequacy of a warning usually is a question of fact for a jury.[16] In appropriate cases, however, a warning may be held adequate as a matter of law and the issue resolved on summary judgment.[17] In *Rolen*, for example, the Texas Court of Appeals held that "if a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law." [18]

 In these cases, the Rezulin information set out in the PDR specifically warned that the injuries claimed by the plaintiffs—nausea, peripheral edema and pain [19]—were possible side effects of Rezulin and did so not merely in the form of

14. *See Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 691–70 (Miss.1988); *Stewart v. Janssen Pharmaceutica, Inc.*, 780 S.W.2d 910, 911 (Tex.App.1989); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex.App. 1993); *Gravis v. Parke–Davis & Co.*, 502 S.W.2d 863, 870 (Tex.Civ.App.1973).

15. *Fortenberry*, 530 So.2d at 691; *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 811–12 (5th Cir.1992) (Mississippi law) (*Fortenberry* requires not only proof of inadequate warning but, also that warning would have changed doctor's decision to prescribe drug); *Rolen*, 856 S.W.2d at 609 ("In [a Texas] . . . failure-to-warn case, the plaintiff must show that the warning was defective and that the failure to warn was the producing cause of the plaintiff's injury.") (citation omitted); *see also Stewart*, 780 S.W.2d at 912 (same); *Gravis*, 502 S.W.2d at 869 (same).

16. *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 592 (1986); *Bituminous Casualty Corp. v. Black and Decker Manuf. Co.*, 518 S.W.2d 868, 873 (Tex.Civ.App.—Dallas 1974); *see also Brumley v. Pfizer, Inc.*, 149 F.Supp.2d 305, 309 (S.D.Tex.2001) (Texas law).

17. *See, e.g., Rolen*, 856 S.W.2d at 609; *Wyeth–Ayerst Lab. Co. v. Medrano*, 28 S.W.3d at 95 n. 6; *Brumley*, 149 F.Supp.2d at 309–310. Texas is in accord with other jurisdictions. *See Martin v. Hacker*, 83 N.Y.2d 1, 10, 607 N.Y.S.2d 598, 601, 628 N.E.2d 1308 (1993) (collecting cases in New York and other jurisdictions).

18. *Rolen*, 856 S.W.2d at 609 (label clearly identifying risk of Stevens–Johnson syndrome adequate as matter of law to warn plaintiff's physician against risk of that condition). *Accord, Wyeth–Ayerst Lab. Co.*, 28 S.W.3d at 95 n. 6; *Dickerson v. Abbott Laboratories*, No. 03–97–00070–CV, 1999 WL 93117, *2 (Tex. App.—Dallas, Feb. 25, 1999) (label clearly identifying risk of lupus adequate as matter of law to warn plaintiff's physician against risk of lupus).

19. Ernestine Conley complains of nausea which according to the PDR table occurred in 4 percent of placebo and in 6 percent of Rezulin patients during clinical trials. Jones and Lambert complain of pain (14 percent in placebo, 10 percent in Rezulin patients) and Jones also of peripheral edema (5 percent in both placebo and Rezulin groups).

cursory references, as plaintiffs suggest,[20] but in a clear and conspicuous table in the adverse reactions section that reported, for each side effect, the incidence that was observed during the Rezulin clinical trials.[21] In consequence, the warning that Rezulin could result in the maladies complained of by these plaintiffs was adequate as a matter of law.

Plaintiffs essentially acknowledge this, arguing instead that the Rezulin warnings were inadequate because they were misleading as to the risk of Rezulin-related liver toxicity.[22] They rely heavily on the Affidavit and Report of Dr. Gueriguian, who asserts, broadly speaking, that the manufacturer defendants concealed information regarding liver toxicity. But this is quite beside the point.

As previously noted, a plaintiff in a Texas failure to warn case must show not only that the warning was inadequate, but that the omission was a producing cause of the particular injuries of which the plaintiff complains. Where, as here, however, the plaintiff suffered no injury of which the manufacturer failed to warn, there is no claim. As one Texas court put it in a failure to warn case against Novartis involving the drug Ritalin:

> "[T]he Plaintiffs make no allegation regarding the second prong [of the test] because they do not plead that the children suffered any injuries or side effects of which Novartis allegedly failed to

warn. Although the Plaintiffs claim that there are 'many significant hazards' of Ritalin treatment . . ., nowhere do the Plaintiffs allege that their children suffered from these side effects. Indeed, the Second Amended Complaint is completely devoid of any allegation that the Plaintiffs' children suffered any injury from Ritalin treatment. As such, no reasonable inference can be drawn as to the existence of facts to support the second prong of a failure to warn cause of action." [23]

Plaintiffs, apparently mindful of the requirement of a causal connection between a deficient warning and the condition complained of, nevertheless attempt to avoid dismissal by contending that the injuries identified in their Fact Sheet responses—nausea, headache, peripheral edema and pain—in fact are "suggestive of liver dysfunction." [24] Perhaps so.[25] At least some of them are suggestive also of a vast variety of other possible causes including motion sickness and unduly strenuous exercise. But all of that too is beside the point. As demonstrated previously, these plaintiffs do not claim to have suffered any liver injury.[26] Their physicians were warned of the risks of the conditions of which they do complain. The fact that there may have been a breach of the duty to warn of liver toxicity for which patients suffering from liver dysfunction may recover[27] does not avail these plaintiffs.

---

**20.** Pl. Mem. 6–7.

**21.** *See* Rezulin labels attached at DX–B through DX–I.

**22.** Pl. Mem. 8–11.

**23.** *Hernandez v. Ciba–Geigy Corp. USA,* 200 F.R.D. 285, 295 (S.D.Tex.2001).

**24.** Pl. Mem. 7.

**25.** Plaintiffs offer no such evidence apart from a statement in the PDR disclosure, which noted that "symptoms associated with

liver dysfunction have been reported including: nausea, vomiting, abdominal pain . . ." DX–F.

**26.** Not only would any such claim be foreclosed by their Fact Sheet responses and their insufficient Rule 56.1 Statements, but they have submitted no affidavits or other evidence that they sustained liver injury.

**27.** The Court expresses no opinion on this point.

Plaintiffs' final contention is that the alleged failure adequately to warn of the risk of liver damage was causally connected to their injuries, even assuming that they sustained no liver injury, because an adequate disclosure of the hepatic risks would have deterred physicians from prescribing the drug although such potential side effects as headaches and nausea were insufficiently grave to have done so.[28]

In support of this contention, plaintiffs rely solely on Dr. Gueriguian's opinions that defendants misrepresented Rezulin's liver toxicity and that physicians in general would have considered the withheld information important in determining whether or not to prescribe Rezulin.[29] Viewed in the light most favorable to them, plaintiffs argue, these opinions "establish" that the Rezulin warnings were inadequate which, they claim, entitles them to the legal presumption that their physicians would have "read and heeded" adequate Rezulin warnings.[30] This argument fails.

To begin with, the Court assumes for purposes of this motion, albeit without deciding, that the warnings with respect to liver toxicity were inadequate. The fact remains, however, that Dr. Gueriguian did not treat any of the plaintiffs. He gave no opinion concerning whether plaintiffs' physicians would have prescribed Rezulin for these individuals if these defendants had disclosed everything plaintiffs contend should have been said about the alleged risk of liver toxicity said to have been

associated with Rezulin. Indeed, it bears noting that one of the experts retained by the Plaintiffs' Executive Committee testified that 95 percent of the patients who took Rezulin suffered no liver injury.[31] Hence, there is no evidence from which a trier of fact reasonably could conclude that these plaintiffs' treating physicians would not have prescribed Rezulin even if plaintiffs are right as to the warning concerning liver toxicity.

Nor does the "read and heeded" presumption help plaintiffs. For one thing, the presumption, in those states that have adopted it, presumes only that:

> "the learned intermediary would have incorporated the 'additional' risk into his [or her] decisional calculus. The burden remains on the plaintiff to demonstrate that the additional non-disclosed risk was sufficiently high that it would have changed the treating physician's decision to prescribe the product for the plaintiff." [32]

There is no such proof here. For another, Texas, "despite the opportunity," has declined to adopt the presumption.[33]

■ Hence, even assuming that the disclosure of the risk of liver injury was inadequate or misleading, the evidence upon which plaintiffs rely is insufficient to justify an inference that the physicians who treated these plaintiffs would not have prescribed the drug had the risks been fully disclosed. And since the burden of proof of causation would be on plaintiffs at trial, their failure to adduce such evidence is fatal here.[34]

---

**28.** Pl. Mem. 8. Specifically, plaintiffs say that defendants' alleged misrepresentations regarding Rezulin's liver toxicity "negate any claim … that *any* part of the Rezulin /label sufficiently warned physicians about the drug's toxic effects." (emphasis in original)

**29.** Gueriguian Aff. ¶¶ 28, 29(j).

**30.** Pl. Mem. 11–12 (citing *Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832 (Tex.1986)).

**31.** *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 64 n. 14 (S.D.N.Y.2002) (citing testimony of Dr. Day). Defendants claim that the correct figure is at least 98 percent. *Id.*

**32.** *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 814 (5th Cir.1992).

**33.** *Id.* at 814 n. 32 (citing *Cooper v. Bowser*, 610 S.W.2d 825, 832–33 (Tex.Civ.App.1980)).

**34.** Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is

### 3. The Mississippi Claims.

As in Texas, the adequacy of a prescription drug warning in Mississippi "usually will be resolved by the trier of fact," [35] but in appropriate cases may be determined as a matter of law.[36] The crux of the inquiry is whether the warning is "reasonable under the circumstances." [37]

■ In determining whether a warning is reasonable as a matter of law, the Mississippi Supreme Court has indicated that a critical, if not dispositive, factor is clear language in the label that specifically addresses the side effect claimed by the plaintiff.[38] Or, as one district court interpreting Mississippi law has said, "[a] warning may be held adequate as a matter of law where the adverse effect that was ultimately visited upon the patient was one that the manufacturer specifically warned against." [39]

The Rezulin label published in the PDR specifically warned of the ailments—dizziness, headache and diarrhea—that allegedly were "visited upon [the three Mississippi plaintiffs]." [40] Defendants therefore have placed in issue the ability of the Mississippi plaintiffs to prove that the warnings supplied to physicians who prescribed Rezulin to them were inadequate, which is an essential element of their claims. In order to avoid summary judgment, plaintiffs were required to adduce admissible evidence sufficient to allow a jury to conclude that the warnings nevertheless were inadequate. Having defaulted on the motion, they failed to do so.

### II. Causation

As in any tort action, plaintiffs are required to establish general and specific causation, viz., that Rezulin was capable of causing, and in fact caused, the injuries they allege.[41]

Defendants assert that there is no reliable scientific evidence that Rezulin can cause headache,[42] pain,[43] diarrhea[44] or pe-

---

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Virgin At. Airways Ltd. v. British Airways PLC, 257 F.3d 256, 273 (2d Cir.2001).

**35.** Fortenberry, 530 So.2d at 692 (citations omitted).

**36.** Id. (citing cases); see also FOWLER HARPER, FLEMING JAMES & OSCAR S. GRAY, THE LAW OF TORTS § 28.7, nn. 27–29 (2d ed.1986 and Supp.1987).

**37.** Fortenberry, 530 So.2d at 692 (citations omitted).

**38.** Fortenberry held that vaccine warnings were adequate as a matter of law where the package insert specifically discussed Guillain–Barre syndrome—the side effect claimed by the plaintiff—in the adverse reactions section, which described the nature of the illness, summarized the state of knowledge on its potential association with the vaccine, and recommended that physicians weigh the risks and benefits for each patient. Id. at 689.

**39.** Cather v. Catheter Technology Corp., 753 F.Supp. 634, 640 (S.D.Miss.1991).

**40.** See Rezulin labels attached as DX–B through DX–I.

**41.** See, e.g., Kelley v. American Heyer–Schulte Corporation, 957 F.Supp. 873, 875–876 (W.D.Tex.1997) (Texas law); Bingham v. Terminix Int'l Co., 158 F.R.D. 97, 99 (S.D.Miss. 1994) (granting summary judgment on ground that "[t]here is still no competent record proof that would support plaintiff's allegation that [the drug at issue] causes cancer").

**42.** Def. 56.1 St. ¶ 28. "Headache" is alleged by Mississippi plaintiffs Hughes, Dent and Marsh. Id. at ¶¶ 1, 4, 7.

**43.** Id. at ¶ 29. "Pain" is alleged by Texas plaintiff Jones as "pain in [the] body" and plaintiff Lambert as "pain in right side near [the] ribs." Id. at ¶¶ 11, 21.

**44.** Id. at ¶ 30. "Diarrhea" is alleged by Marsh. Id. at ¶ 7.

ripheral edema.[45] They point to the adverse event table in the Rezulin PDR, which reported that these four conditions occurred in the placebo group at frequencies equal to, or greater than, in the Rezulin group.[46]

This evidence tends to negate an inference of causation. While the Court expresses no opinion as to whether it would be dispositive of the ultimate question whether scientific evidence proves or disproves a causal link between Rezulin and these four side effects, that is not what is required at this stage. Defendants, as movants, need only suggest that there is an "absence of evidence to support" an essential element of the plaintiffs' case.[47] As they have done so, the burden shifted to the plaintiffs to come forward with admissible evidence sufficient to justify an inference of general causation.

█ The Mississippi plaintiffs have not responded to the motion. Although the Texas plaintiffs responded, effectively ignored this point.[48] In the circumstances, plaintiffs have failed to establish the existence of a genuine issue of fact as to whether Rezulin is capable of causing the four side effects at issue. Accordingly, the defendants are entitled to judgment as a matter of law dismissing so much of the claims as allege injury in the form of one or more of these conditions.

### III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaints of plaintiff Hughes in 01 Civ. 3458, plaintiff Dent in 01 Civ. 3459, plaintiff Conley in 02 Civ. 8395, plaintiff Jones in 02 Civ. 1721, and plaintiff Lambert in 02 Civ. 1723 (00 Civ. 2843, docket item 2323) is granted in all respects. Insofar as defendant sought dismissal of the complaint of plaintiff Marsh in 01 Civ. 3460, the motion is granted with respect to her claims of headache and dizziness and denied in all other respects.

SO ORDERED.

█

45. *Id.* at ¶ 31. This condition is alleged by plaintiff Jones as "swelling in [the] feet." *Id.* at ¶ 11.

46. Specifically, headaches and peripheral edema reportedly occurred at the same rates—respectively, 11 percent and 5 percent—in the two groups. Pain reportedly occurred in 14 percent of placebo versus 10 percent of Rezulin patients. Diarrhea reportedly occurred in 6 percent of placebo versus 5 percent of Rezulin patients. *See* DX–B to DX–I (Rezulin PDR labels reproducing the adverse event table). Defendants refer to these side effects as the "Placebo Group Side-Effects."

47. *See Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548.

48. Plaintiffs' failure to controvert the assertion in defendants' Rule 56.1 Statement that there is no reliable scientific evidence that Rezulin can cause headache, pain, diarrhea, or peripheral edema—an assertion supported by the clinical trials data showing no meaningful difference in the incidence of these conditions as between the Rezulin and placebo groups—results in the admission of defendants' assertion. In any case, plaintiffs have offered no evidence to support an inference of general causation.